UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LUIS SILVA ORELLANA,

Petitioner,

v.

KRISTI NOEM et al.,

Respondents.

Case No. 1:25-cv-1333

Honorable Jane M. Beckering

**OPINION**

Petitioner initiated this action on October 31, 2025, by filing a counseled combined petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241 and complaint for emergency injunctive relief. (Petition, ECF No. 1.) Petitioner is a United States Immigration and Customs Enforcement (ICE) detainee currently detained at the North Lake Processing Center located in Baldwin, Lake County, Michigan.

Petitioner challenges the lawfulness of his current detention and asks the Court for the following relief: to accept jurisdiction over this action; to declare that Respondents' actions to detain Petitioner violate the Due Process Clause of the Fifth Amendment and the Immigration and Nationality Act; to issue a writ of habeas corpus pursuant to 28 U.S.C. § 2241 either ordering Petitioner's immediate release or ordering Respondents to promptly schedule a bond hearing for Petitioner's removal proceedings; and, to award attorneys' fees and costs for this action. (*Id.*,

PageID.17–18.)[1] For the following reasons, the Court will conditionally grant Petitioner's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241.

**Discussion**

**I. Factual Allegations**

Petitioner is a native and citizen of Guatemala. (Petition, ECF No. 1, PageID.1, 4; Wachowski Decl. ¶ 4, ECF No. 4-1, PageID.53.) Petitioner entered the United States in 2024 "without inspection and has remained in the United States ever since." (Petition, ECF No. 1, PageID.4.) On May 24, 2024, after Petitioner's entry into the United States, United States Border Patrol (USBP) encountered Petitioner "in the Rio Grande Valley, Texas Border Patrol Sector," and USBP "determined [that Petitioner] had entered the United States at an unknown date, time, and place without being inspected and admitted or paroled by immigration officials." (Wachowski Decl. ¶ 4, ECF No. 4-1, PageID.53.) At that time, Petitioner "claimed fear of persecution or torture if [he] returned to Guatemala." (*Id.* ¶ 5, PageID.53–54.) "USBP referred [Petitioner] for a credible fear interview with an asylum officer with the United States Citizen and Immigration Services (USCIS)," and Petitioner "was released from [Department of Homeland Security] custody on or about May 26, 2024, and was instructed to report to ICE's Chicago Field Office . . . for his scheduled credible fear interview." (*Id.* ¶ 6, PageID.54.)

[1] In his petition, Petitioner sought either an initial temporary restraining order compelling Respondents to conduct a bond hearing to ensure Petitioner's due process rights, or alternatively, Petitioner asked the Court to order Respondents to show cause, within three days, why the petition should not be granted. (Petition, ECF No. 1, PageID.2.) In an Order entered on November 3, 2025, the Court directed Respondents to show cause, within three business days, why the writ of habeas corpus and other relief requested by Petitioner should not be granted. (Order, ECF No. 3.) Respondents filed their response on November 6, 2025 (ECF No. 4), and Petitioner filed his reply later that same day (ECF No. 5).

On June 10, 2024, Petitioner reported as directed, and "an asylum officer interviewed [Petitioner] on his claimed fear of returning to Guatemala." (*Id.* ¶ 7.) On June 17, 2024, an asylum officer with USCIS "determined [Petitioner] had a credible fear and issued him a Form I-862, Notice to Appear (NTA)." (*Id.* ¶ 8.) Petitioner was charged with inadmissibility pursuant to § 212(a)(6)(A)(i) of the Immigration and Nationality Act (INA) because Petitioner "is an immigrant who is present in the United States without having been admitted or paroled, or who arrived at a time or place not designated by the Attorney General" and pursuant to "[§] 212(a)(7)(A)(i)(I) of the INA for being an immigrant who, at the time of application for admission, is not in possession of valid immigration and travel documents." (*Id.*) "The NTA was filed with the Chicago Immigration Court, thereby commencing removal proceedings." (*Id.*, PageID.54–55.)

On May 16, 2025, Petitioner "filed a Form I-589, Application for Asylum and for Withholding of Removal, with the Chicago Immigration Court, and a master calendar hearing on the non-detained docket was scheduled for November 14, 2025." (*Id.* ¶ 9, PageID.55.) On October 22, 2025, ICE Enforcement and Removal Operations arrested Petitioner "during a local operation conducted in or around the general area of Chicago, Illinois." (*Id.* ¶ 10.)

Respondents contend that Petitioner is presently detained without bond under § 235 of the INA on the basis that he "is an applicant for admission who is seeking admission, and he is not clearly and beyond doubt entitled to admission." (*Id.* ¶ 11.) Respondents report that Petitioner "is in removal proceedings on the detained docket before the Detroit Immigration Court and is awaiting a master calendar hearing." (*Id.* ¶ 12.)

Prior to Petitioner's present detention, he resided in Illinois "with his wife and child, with another child on the way." (Petition, ECF No. 1, PageID.4.)

## II. Exhaustion

Respondents first contend that the Court should deny Petitioner's request for habeas corpus relief because Petitioner has not requested a bond hearing before the immigration court and, therefore, has not exhausted his administrative remedies. (Resp., ECF No. 4, PageID.26.) Respondents argue that Petitioner should request a bond hearing and, if necessary, appeal any unfavorable decision to the Board of Immigration Appeals (BIA). (*Id.*)

Here, no applicable statute or rule mandates administrative exhaustion by Petitioner. Thus, whether to require exhaustion is within this Court's "sound judicial discretion." *See Shearson v. Holder*, 725 F.3d 588, 593–94 (6th Cir. 2013) (quoting *McCarthy v. Madigan*, 503 U.S. 140, 144 (1992)). "Courts have described an implied requirement to raise issues with an agency as a 'judge-made,' 'prudential,' or 'common law' duty to exhaust," *Island Creek Coal Co. v. Bryan*, 937 F.3d 738, 746 (6th Cir. 2019) (citations omitted), and such a court-made exhaustion rule must comply with statutory schemes and Congressional intent, *Shearson*, 725 F.3d at 593–94. Notably, the United States Court of Appeals for the Sixth Circuit has not yet decided "whether courts should impose administrative exhaustion in the context of a noncitizen's habeas petition for unlawful mandatory detention," *Pizarro Reyes v. Raycraft*, No. 25-cv-12546, 2025 WL 2609425, at *3 (E.D. Mich. Sept. 9, 2025) (citing *Hernandez Torrealba v. U.S. Dep't of Homeland Sec.*, No. 1:25-cv-1621, 2025 WL 2444114, at *8 (N.D. Ohio Aug. 25, 2025)), and "[t]he Sixth Circuit has not formally adopted a standard for determining when prudential exhaustion applies." *Lopez-Campos v. Raycraft*, No. 2:25-cv-12486, 2025 WL 2496379, at *4 (E.D. Mich. Aug. 29, 2025). However, courts within the Sixth Circuit "have applied the three-factor test, set forth in *United States v. California Care Corp.*, 709 F.2d 1241, 1248 (9th Cir. 1983) (derived from *McGee v. United States*,

402 U.S. 479, 484[ (1971)]; *McKart v. United States*, 395 U.S. 185, 193–95[ (1969)),]" to determine whether prudential exhaustion should be required. *Id.* Under this three-factor test,

> Courts may require prudential exhaustion when:
>
> (1) agency expertise makes agency consideration necessary to generate a proper record and reach a proper decision;
>
> (2) relaxation of the requirement would encourage the deliberate bypass of the administrative scheme; and
>
> (3) administrative review is likely to allow the agency to correct its own mistakes and to preclude the need for judicial review.

*Id.* (citing *Shweika v. Dep't of Homeland Sec.*, No. 1:06-cv-11781, 2015 WL 6541689, at *12 (E.D. Mich. Oct. 29, 2015)).

Upon consideration of these factors, this Court concludes that prudential exhaustion should not be required in Petitioner's case. First, the central question presented by Petitioner's § 2241 petition is whether 8 U.S.C. § 1225 or 8 U.S.C. § 1226 applies to Petitioner. That determination relies upon a purely legal question of statutory interpretation and does not require the record that would be developed should the Court require Petitioner to exhaust his administrative remedies. Moreover, this Court is not bound by, and is not required to give deference to, any agency interpretation of a statute. *See Loper Bright Enter. v. Raimondo*, 144 S. Ct. 2244, 2273 (2024) (discussing that "courts need not and under the [Administrative Procedure Act (APA)] may not defer to an agency interpretation of the law simply because a statute is ambiguous").

Second, Petitioner's constitutional challenge to his detention does not require exhaustion. The Sixth Circuit has noted that due process challenges, such as the one raised by Petitioner, which are not premised on "correctable procedural errors," generally do not require exhaustion because the BIA cannot review constitutional challenges. *See Sterkaj v. Gonzales*, 439 F.3d 273, 279 (6th Cir. 2006) (discussing that "an alien's due process challenge generally does not require

exhaustion," but noting that an "alien must raise correctable procedural errors," such as a claim "that the BIA denied him due process by relying upon an 'incomplete and inaccurate' transcript to review his case," "to the BIA"). Finally, it is doubtful that BIA review of Petitioner's custody would preclude the need for judicial review. The Court reaches that conclusion based upon the fact that the Government has clearly set forth its belief that § 1225(b)(1)(A) applies to all noncitizens who have resided within the United States prior to their arrest and detention. Notably, the BIA recently proclaimed that any individual who has ever entered the United States unlawfully and was later detained is no longer eligible for bond and is subject to mandatory detention under § 1225(b)(2)(A). *See Matter of Yajure Hurtado*, 29 I&N Dec. 216, 229 (BIA 2025). If Petitioner were to request a bond hearing before an immigration judge, that request would likely be denied given the BIA's recent decision in *Yajure Hurtado*. Moreover, it is simply unlikely that any administrative review by the BIA of that denial would lead the Government to change its position, and thereby obviate the need for judicial review of Petitioner's § 2241 petition. Accordingly, for the foregoing reasons, this Court concludes that prudential exhaustion is not required.

Alternatively, even in situations where a court may ordinarily apply prudential exhaustion, the court may still choose to waive exhaustion. *See Lopez-Campos*, 2025 WL 2496379, at *4 (citations omitted). A court may choose to rule upon the merits of the issues presented when the "legal question is 'fit' for resolution and delay means hardship." *Shalala v. Ill. Council on Long Term Care, Inc.*, 529 U.S. 1, 13 (2000) (citation omitted). A court may also waive exhaustion if the "pursuit of administrative remedies would be a futile gesture." *Shearson*, 725 F.3d at 594 (citation omitted).

Here, it is clear that delay would result in hardship to Petitioner. First, as noted above, Petitioner would need to request a bond hearing before an immigration judge. There is no evidence

in the record as to how long Petitioner would have to wait until such a hearing, if any, were scheduled. Petitioner's request would likely be denied given the BIA's recent decision in *Yajure Hurtado*. Then, Petitioner would have the opportunity to appeal any unfavorable decision to the BIA. Appeals of bond denials "typically take six months or more to be resolved at the BIA." *See Rodriguez v. Bostock*, 779 F. Supp. 3d 1239, 1245 (W.D. Wash. 2025) (citation omitted). It is possible that a determination from the BIA as to whether Petitioner is entitled to bond would come before any final decision regarding removal. Nevertheless, it is "unmistakable that . . . depriving [Petitioner] of his liberty while awaiting a BIA appeal decision certainly equates to hardship. And any delay results in the very harm [Petitioner] is trying to avoid . . . – detention." *See Lopez-Campos*, 2025 WL 2496379, at *5.

In sum, the Court declines to enforce the doctrine of prudential exhaustion against Petitioner. Moreover, even if the Court were to conclude that exhaustion is warranted, the Court concludes in the alternative that waiver of exhaustion is appropriate. Accordingly, the Court will proceed to address the merits of Petitioner's § 2241 petition.

## III. Merits Discussion

### A. Statutory Basis for Petitioner's Detention

Petitioner contends that Respondents have violated the INA by concluding that Petitioner is detained pursuant to the mandatory detention provisions set forth in 8 U.S.C. § 1225(b)(2). (*See* Petition, ECF No. 1, PageID.17.) Respondents, however, contend that Petitioner is "subject to detention under § 1225(b)(2)(A) and ineligible for a bond redetermination hearing before an [immigration judge]." (Resp., ECF No. 4, PageID.43.)

Section 1225(b)(2)(A) provides that

> . . . in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and

> beyond a doubt entitled to be admitted, the alien shall be detained for a proceeding under section 1229a of this title.

8 U.S.C. § 1225(b)(2)(A). And, § 1226(a) states that "[o]n a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States." *Id.* § 1226(a). The plain language of these provisions indicates that both § 1225 and § 1226 govern the detention of noncitizens pending removal proceedings. The difference is that § 1225 provides for mandatory detention and § 1226 allows for the release of the noncitizen on conditional parole or bond. As explained below, the Court concludes that § 1226(a), not § 1225(b)(2)(A), applies to noncitizens, such as Petitioner, who have resided in the United States and were already within the United States when apprehended and arrested.

"A statute should be construed so that effect is given to all its provisions." *Hibbs v. Winn*, 542 U.S. 88, 101 (2004) (citation omitted); *see Corley v. United States*, 556 U.S. 303, 314 (2009); *see also Kentucky v. Biden*, 23 F.4th 585, 603 (6th Cir. 2022) (noting that courts "must give effect to the clear meaning of statutes as written" (citation omitted)). "When interpreting a statute, the inquiry 'begins with the statutory text, and ends there as well if the text is unambiguous.'" *See In re Vill. Apothecary, Inc.*, 45 F.4th 940, 947 (6th Cir. 2022) (citation omitted)). But, "the 'meaning—or ambiguity—of certain words or phrases may only become evident when placed in context.'" *King v. Burwell*, 576 U.S. 473, 486 (2015) (citation omitted). "[T]he words of a statute must be read in their context and with a view to their place in the overall statutory scheme." *Roberts v. Sea-Land Servs., Inc.*, 566 U.S. 93, 101 (2012) (citation omitted). The Court must also "use every tool at [its] disposal to determine the best reading of the statute." *Loper Bright Enter. v. Raimondo*, 144 S. Ct. 2244, 2266 (2024).

As set forth above, § 1225(b)(2)(A) provides for the detention "of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking

admission is not clearly and beyond a doubt entitled to be admitted." 8 U.S.C. § 1225(b)(2)(A). An "applicant for admission" is defined as "[a]n alien present in the United States who has not been admitted or who arrives in the United States . . . ." *See id.* § 1225(a)(1). The INA further defines "admission" and "admitted" as "the lawful entry of the alien into the United States after inspection and authorization by an immigration officer." *See id.* § 1101(a)(13). "Section 1226(a) is less specific," *Pizarro Reyes v. Raycraft*, No. 25-cv-12546, 2025 WL 2609425, at *4 (E.D. Mich. Sept. 9, 2025), and states that "[o]n a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States." *See* 8 U.S.C. § 1226(a).

"[T]he statutory text does not provide a definitive answer as to what it means to be present without admittance where, as here, the individual has already entered and spent [time] living in the United States." *Pizarro Reyes*, 2025 WL 2609425, at *5. And, even if the terms of § 1225 seem unambiguous when viewed in isolation, "courts are to interpret the words of a statute in context." *Hibbs*, 542 U.S. at 101 (citation omitted); *see Yates v. United States*, 574 U.S. 528, 537 (2015) ("Whether a statutory term is unambiguous, however, does not turn solely on dictionary definitions of its component words. Rather, '[t]he plainness or ambiguity of statutory language is determined [not only] by reference to the language itself, [but as well by] the specific context in which that language is used, and the broader context of the statute as a whole.'" (alterations in original) (citations omitted)).

Section 1225 is titled: "Inspection by immigration officers; expedited removal of inadmissible arriving aliens; referral for hearing." 8 U.S.C. § 1225. A title such as this "is especially valuable [where] it reinforces what the text's nouns and verbs independently suggest." *Yates*, 574 U.S. at 552 (Alito, J., concurring). Additionally, Congress's decision to include the

word "arriving," as well as the decision to include references to methods of physical arrival, such as "stowaways" and "crewm[e]n," in § 1225 evidences an intent to address noncitizens arriving "at a border or port of entry." *Pizarro Reyes*, 2025 WL 2609425, at *5. In contrast, § 1226 is titled, "Apprehension and detention of aliens." 8 U.S.C. § 1226. "That Congress separated removal of arriving aliens[, as set forth in § 1225,] from its more general section for 'Apprehension and detention of aliens,' [as set forth in] § 1226, implies that Congress enacted § 1225 for a specific, limited purpose." *Pizarro Reyes*, 2025 WL 2609425, at *5 (citing *Dubin v. United States*, 143 S. Ct. 1557, 1567–68 (2023)).

Further, in *Jennings v. Rodriguez*, 583 U.S. 281 (2018), the United States Supreme Court discussed that § 1225 is part of the "process of decision [that] generally begins at the Nation's borders and ports of entry, where the Government must determine whether an alien seeking to enter the country is admissible." *Jennings*, 583 U.S. at 287. The United States Supreme Court stated that, in contrast, "[s]ection 1226 generally governs the process of arresting and detaining . . . aliens [already living within the United States] pending their removal." *Id.* at 288. Thus, in *Jennings*, the United States Supreme Court differentiated between noncitizens initially arriving to the United States who are governed by § 1225, and noncitizens already present in the country who are governed by § 1226. *See id.* at 288–89.

The broader language of the statute, as recently amended, further supports the Court's conclusion. Recently, Congress passed the Laken Riley Act, which amended § 1226 to prescribe a subset of noncitizens who are exempt from the discretionary bond analysis. Specifically, the Act added a subsection that explicitly mandates detention for those noncitizens who are inadmissible under §§ 1182(a)(6)(A), 1182(a)(6)(C), and 1182(a)(7), *and* who have been arrested for, charged with, or convicted of certain crimes. *See* 8 U.S.C. § 1226(c)(1)(E). If the Court accepted

Respondents' interpretation of §§ 1225 and 1226, § 1226(c)(1)(E) would be rendered entirely superfluous. *See Corey*, 556 U.S. at 314 ("A statute should be construed so that effect is given to all its provisions.").

Here, Petitioner has been present in the United States since 2024. (Petition, ECF No. 1, PageID.4.) Thus, Petitioner is a noncitizen who is already present in the United States, meaning that "[s]ection 1226 generally governs." *Jennings*, 583 U.S. at 288. Petitioner is not a noncitizen just arriving to the United States, meaning he is not part of the "process of decision [that] generally begins at the Nation's borders and ports of entry, where the Government must determine whether an alien seeking to [initially] enter the country is admissible." *Id.* at 287 (discussing the applicability of § 1225).

Accordingly, for the above-discussed reasons, the Court concludes that § 1226(a), not § 1225(b)(2)(A), governs noncitizens, such as Petitioner, who have resided in the United States and were already within the United States when apprehended and arrested.[2]

[2] The Court has recently reached the same conclusion in a number of other habeas corpus actions filed by immigration detainees. *See, e.g.*, *Salgado Mendoza v. Noem*, No. 1:25-cv-1252, 2025 WL 3077589, at *6 (W.D. Mich. Nov. 4, 2025); *Ruiz Mejia v. Noem*, No. 1:25-cv-1227, 2025 WL 3041827, at *5–6 (W.D. Mich. Oct. 31, 2025); *De Jesus Ramirez v. Noem*, No. 1:25-cv-1261, 2025 WL 3039266, at *5 (W.D. Mich. Oct. 31, 2025); *Escobar-Ruiz v. Raycraft*, No. 1:25-cv-1232, 2025 WL 3039255, at *5 (W.D. Mich. Oct. 31, 2025); *Marin Garcia v. Noem*, No. 1:25-cv-1271, 2025 WL 3017200, at *5 (W.D. Mich. Oct. 29, 2025); *Cervantes Rodriguez v. Noem*, No. 1:25-cv-1196, 2025 WL 3022212, at *6 (W.D. Mich. Oct. 29, 2025); *Puerto-Hernandez v. Lynch*, No. 1:25-cv-1097, 2025 WL 3012033, at *9 (W.D. Mich. Oct. 28, 2025); *Rodriguez Carmona v. Noem*, No. 1:25-cv-1131, 2025 WL 2992222, at *6 (W.D. Mich. Oct. 24, 2025); *Sanchez Alvarez v. Noem*, No. 1:25-cv-1090, 2025 WL 2942648, at *6 (W.D. Mich. Oct. 17, 2025). Moreover, this Court is far from the first federal District Court to reach this conclusion. Petitioner cites dozens of cases that reach the same conclusion. (*See* Petition, ECF No. 1, PageID.12–15; Reply, ECF No. 5, PageID.62–64.)

**B. Fifth Amendment Due Process Considerations**

Petitioner also argues that his detention violates the Fifth Amendment's Due Process Clause. (*See* Petition, ECF No. 1, PageID.15–16.) Petitioner contends that "Respondents have not demonstrated that Petitioner needs to be detained." (*Id.*, PageID.16 (citation omitted).) Petitioner also contends that he "should have the opportunity to have a bond hearing before an Immigration Judge," and that "[b]y issuing its decision in *Matter of Yajure Hurtado*, the BIA has taken nearly all bond authority away from Immigration Judges." (*Id.*) Respondents counter Petitioner's arguments by stating that Petitioner has received due process because:

> Petitioner received notice of the charges against him, has access to counsel, may attend hearings with an immigration judge, can request bond at that time, has the right to appeal the denial of any request for bond, and has been detained by ICE for a short time.

(Resp., ECF No. 4, PageID.49.)

"Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the very liberty that [the Due Process Clause] protects." *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001) (citation omitted). The Fifth Amendment's Due Process Clause extends to all persons, regardless of status. *See A. A. R. P. v. Trump*, 145 S. Ct. 1364, 1367 (2025). Thus, noncitizens, such as Petitioner, are entitled to its protections. *See id.*; *see also Chavez-Acosta v. Garland*, No. 22-3045, 2023 WL 246837, at *3 (6th Cir. Jan. 18. 2023).

Respondents contend that Petitioner is entitled to no further process at this time. (*See, e.g.*, Resp. ECF No. 4, PageID.49.) Respondents' assertion, however, is contradicted by their own supporting evidence—there is nothing in the record before the Court to suggest that a bond hearing has been scheduled. Respondents claim further "that statutory provisions denying bond during administrative removal proceedings do not violate the [D]ue [P]rocess [C]lause." (*Id.*, PageID.48 (citation omitted).)

If this Court agreed with Respondents that Petitioner's detention is governed by § 1225(b)(2)(A), then the Government's due process argument might carry more weight. However, as set forth above, this Court does not agree with Respondents that Petitioner's detention is governed by § 1225(b)(2)(A). Instead, Petitioner's detention is governed by § 1226(a). Section 1226(a) clearly sets forth a discretionary framework for detention or release of an alien subject to that provision. The statute allows the Attorney General to continue to detain the arrested alien, or release the alien on "bond of at least $1,500 with security approved by, and containing conditions prescribed by, the Attorney General," or "conditional parole." *See* 8 U.S.C. § 1226(a)(1)–(2). This discretionary framework "requires a bond hearing to make an individualized custody determination." *See Lopez-Campos*, 2025 WL 2496379, at *9.

The Sixth Circuit has discussed that the balancing test set forth in *Mathews v. Eldridge*, 424 U.S. 319 (1976), regarding the adequacy of process, applies in the context of immigration detention. *See, e.g.*, *United States v. Silvestre-Gregorio*, 983 F.3d 848, 852–56 (6th Cir. 2020) ("If this court has previously addressed the due-process claim, then we are bound by precedent; if the claim is an issue of first impression, then we generally apply the three-factor test the Supreme Court set out in *Mathews v. Eldridge*. . . ."). Under *Mathews*, the Court must consider the following three factors: "(1) the private interest that will be affected by official action; (2) the risk of erroneous deprivation of that interest; and (3) the government's interest, including the fiscal and administrative burdens that the additional or substitute procedures entail." *See Lopez-Campos*, 2025 WL 2496379, at *9 (citing *Mathews*, 424 U.S. at 335).

The first *Mathews* factor clearly weighs in favor of Petitioner. There is no dispute that Petitioner has a significant private interest in avoiding detention, as one of the "most elemental of liberty interests" is to be free from detention. *Hamdi v. Rumsfeld*, 542 U.S. 507, 529 (2004)

(citation omitted). The Court may also consider Petitioner's conditions of confinement, i.e., "whether a detainee is held in conditions indistinguishable from criminal incarceration." *See Günaydin v. Trump*, 784 F. Supp. 3d 1175, 1187 (D. Minn. 2025) (citing *Hernandez-Lara v. Lyons*, 10 F.4th 19, 28 (1st Cir. 2021); *Velasco Lopez v. Decker*, 978 F.3d 842, 851 (2d Cir. 2020)). Here, Petitioner, through counsel, represents that he has a wife and child, and another child on the way, and that Petitioner "is the primary financial support for the family." (Petition, ECF No. 1, PageID.4.) There can be no doubt that he is "experiencing [many of] the deprivations of incarceration, including loss of contact with friends and family, loss of income earning, . . . lack of privacy, and, most fundamentally, the lack of freedom of movement." *See Günaydin*, 784 F. Supp. 3d at 1187.

Likewise, the second *Mathews* factor weighs in Petitioner's favor. An individualized bond hearing ensures that an immigration judge can assess whether Petitioner poses a flight risk or a danger to the community, reducing the risk that Petitioner will suffer an "erroneous deprivation" of his rights. *See Lopez-Campos*, 2025 WL 2496379, at *9.

Under the third *Mathews* factor, the Court recognizes that the Government "does, indeed, have a legitimate interest in ensuring noncitizens' appearance at removal proceedings and preventing harms to the community." *See Sampiao v. Hyde*, No. 1:25-cv-11981-JEK, 2025 WL 2607924, at *12 (D. Mass. Sept. 9, 2025) (citation omitted). However, given the record available to the Court, Respondents have not established a significant interest in potentially "detaining someone who [could convince] a neutral adjudicator, following a hearing and assessment of the evidence, that his ongoing detention is not warranted." *See id.* Furthermore, Respondents have not established that an individualized hearing would pose "administrative or financial costs" in this

case—"[t]o the contrary," Respondents' position "requires the government to continue funding and overseeing [Petitioner's] detention[.]" *See id.*

In sum, the Court's balancing of the *Mathews* factors weighs in Petitioner's favor. Accordingly, the Court concludes that Petitioner's current detention under the mandatory detention framework set forth in § 1225(b)(2)(A) violates Petitioner's Fifth Amendment due process rights.

**Conclusion**

For the reasons discussed above, the Court will enter a Judgment conditionally granting Petitioner's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241. (ECF No. 1.) The Court will order Respondents to provide Petitioner with a bond hearing under 8 U.S.C. § 1226(a) within five business days of the date of this Court's Opinion and Judgment, or, in the alternative, immediately release Petitioner from custody. The Court will also order Respondents to file a status report within six business days of the date of this Court's Opinion and Judgment to certify compliance with this Opinion and the corresponding Judgment. The status report shall include if and when the bond hearing occurred, if bond was granted or denied, and if bond was denied, the reasons for the denial.

Dated: November 17, 2025

/s/ Jane M. Beckering
Jane M. Beckering
United States District Judge